**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald S. Roth, | ) No. CV-05-2152-PCT-LOA |
| Plaintiff, | ) |
| | ) **ORDER** |
| vs. | ) |
| | ) |
| JoAnne Barnhart, Commissioner of the | ) |
| Social Security Administration, | ) |
| Defendant. | ) |
| | ) |

Plaintiff Donald S. Roth ("Plaintiff") seeks judicial review of the Administrative Law Judge's decision denying his disability insurance benefits.  All parties have previously consented in writing to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (docket # 6)

## I.  PROCEDURAL HISTORY

On November 26, 2002,[1] Plaintiff protectively filed an application under Title II and Title XVI for Disability Insurance Benefits and Supplemental Security Income payments under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq* and § 1382 *et seq*.[2], respectively.

---

[1] (Tr. at 27; however, the transcript at 494 of the hearing indicates that the ALJ and Plaintiff's counsel believed the protective filing date was December 12, 2002.)("Tr." stands for the transcript filed by the Commissioner as part of her Answer. Title 42 U.S.C. § 405(g)).

[2] Guadamuz v. Bowen, 859 F.2d 762, 763 (9th Cir. 1988) and Corrao v. Shalala, 20 F.3d 943, 948 n.3 (9th Cir. 1994) compare the two benefit programs. The parallel five-step

1   Plaintiff alleged disability starting March 1, 2002[3] due to bipolar disorder, attention deficit

2   hyperactivity disorder, hypertension, hearing loss, memory loss, back pain and chronic

3   respiratory problems. (Tr. at 28)  Several earlier applications for benefits were filed and denied

4   for reasons not relevant to this appeal as Plaintiff did not request their reopening. (Id.)

5           Upon Plaintiff's October 30, 2003 request (Tr. at 63), Administrative Law Judge

6   ("ALJ") Joan G. Knight conducted a hearing on Plaintiff's application on October 18, 2004. (Tr.

7   at 27)  In a November 24, 2004 written decision, the ALJ determined that although Plaintiff has

8   severe impairments[4], has not engaged in substantial gainful activity since the alleged onset of

9   disability[5] and is unable to perform any of his past relevant work[6], the ALJ concluded that

10  Plaintiff is, nevertheless, able to perform "light work", as defined in the Regulations, found in

11  significant numbers in the national economy as identified by the testifying vocational expert,

12  George J. Bluth, Ph.D.  (Tr. at 37, ¶ 3.)  The ALJ denied Plaintiff's claims for benefits finding

13  that Plaintiff was not under a "disability" as defined in the Act at any time through the date of

14  her decision.  Specifically, the ALJ determined that Plaintiff is capable of performing "light

15  work"[7] and "retains the ability to perform simple repetitive tasks . . . [and] is limited to a work

16  _____

17  sequential evaluation, however, governs eligibility for benefits under both programs. See 20
    C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76.

18

19          [3] Tr. at 28.

20          [4]  Specifically, the ALJ found that Plaintiff's "chronic obstructive pulmonary disease,
    asthma, sleep apnea, obesity, cervical and lumbar degenerative disc disease, bipolar disorder,

21  a learning disorder and polysubstance dependence allegedly in remission" are severe
    impairments within the meaning of the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

22  (Tr. at 37, ¶ 3)

23          [5] Tr. at 37, ¶ 2.

24
            [6] Tr. at 37, ¶ 7.
25

26          [7] The Commissioner classifies physical exertional requirements of work as "sedentary,"
    "light," "medium," "heavy," and "very heavy" work. 20 C.F.R. § 404.1567. (Plaintiff's

27  Statement of Facts ["PSOF"], p. 3)

28          "Light work" is defined as work that requires lifting no more than 20 pounds at a time
    with  frequent  lifting  or  carrying  of  objects  weighing  up  to  10  pounds.  20  C.F.R.  §

1   environment which requires minimal interpersonal contact and demand." (Tr. at 37, ¶ 11 and ¶

2   6, respectively)    The ALJ's decision became the final decision of the Commissioner on June 1,

3   2005 when the Social Security Appeals Council denied Plaintiff's January 20, 2005 request for

4   review. (Tr. at 7, 20)

5          Having exhausted the administrative review process, Plaintiff timely appealed the

6   Commissioner's final determination to this federal court pursuant to 42 U.S.C. § 405(g) by filing

7   his Complaint on July 1, 2005. (Docket # 1)  On January 11, 2006, Plaintiff moved for summary

8   judgment. (Docket ## 14-16)   On February 13, 2006, the Commissioner filed her response in

9   opposition to Plaintiff's summary judgment motion and Cross-motion for Summary Judgment

10  (Docket ## 20-23) to which Plaintiff responded on February 28, 2006  (docket # 24).   The

11  Commissioner has not filed a reply. Oral argument has not been requested. The matter is now

12  ripe for ruling.

13                          **II. STANDARD OF REVIEW**

14         The district court must affirm the Commissioner's findings if they are supported by

15  substantial evidence and are free from reversible legal error.   Smolen v. Chater, 80 F.3d 1273,

16  1279 (9th Cir. 1996); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence

17  means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence

18  as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales,

19  402 U.S. 389, 401 (1971); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  In determining

20  whether substantial evidence supports a decision, the district court considers the record as a

21  whole, weighing both the evidence that supports and that which detracts from the ALJ's

22  conclusions. Reddick, 157 F.3d at 720; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).

23  The ALJ is responsible for resolving conflicts, determining credibility, and resolving

24  ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallanes v. Bowen, 881

25  F.2d 747, 750 (9th Cir. 1989).  The ALJ is also required to "scrupulously and conscientiously

26  ─────────────────

27  404.1567(b). To perform the full range of light work, a person must be able to stand or walk,
    off and on, for a total of approximately six hours out of an eight-hour day. Social Security
28  Ruling 83-10; Plaintiff's Statement of Facts, p. 3.

1   probe into, inquire of, and explore for all the relevant facts," being especially diligent to ensure

2   favorable as well as unfavorable facts are elicited. Higbee v. Sullivan, 975 F.2d 558, 561 (9th

3   Cir.1992). If sufficient evidence supports the ALJ's determination, the district court cannot

4   substitute its own determination.   Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990).

5   Therefore, if on the whole record before the district court, substantial evidence supports the

6   ALJ's decision, the district court must affirm it. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

7   1989); 42 U.S.C.A. § 405(g).

8           Under the Social Security Act, a "disability" is defined as an "inability to engage in

9   any substantial gainful activity by reason of any medically determinable physical or mental

10   impairment which can be expected to result in death or which has lasted or can be expected to

11   last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A). An

12   individual is determined to be under a disability if "his physical or mental impairment or

13   impairments are of such severity that he is not only unable to do his previous work but cannot,

14   considering his age, education, and work experience, engage in any other kind of substantial

15   gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).   A claimant

16   bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423 (d)(5); Ukolov v.

17   Barnhart, 420 F.3d 1002, 1104 (9th Cir. 2005); Reddick, 157 F.3d at 721.  If a claimant shows

18   that he or she was unable to perform past relevant work, the burden shifts to the Commissioner

19   to show that the claimant "can perform other substantial gainful work that exists in the national

20   economy." Reddick, 157 F.3d at 721; Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir.1989);

21   Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2004).

22           In order to determine whether a claimant is disabled within the meaning of the Act,

23   a five-step evaluation must be performed by the ALJ:

24       (1) if the claimant is performing substantial gainful work, s/he is not disabled.

25       (2)  if the claimant is not performing substantial gainful work, his impairment(s)
         must be "severe" before s/he can be found to be disabled
26

27       (3) If the claimant is not performing substantial gainful work and has a "severe"
         impairment(s) that has lasted or is expected to last for a continuous period of at
         least twelve months, and his/her impairment(s) meets or medically equals a listed
28       impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant

1   is presumed disabled without further inquiry.

2   (4) if the claimant's impairment(s) does not prevent him/her from doing claimant's
    past relevant work, s/he is not disabled.

3

4   (5) if the claimant's impairment(s) prevents him/her from performing his/her past
    relevant work, if other work exits in significant numbers in the national economy
    that accommodates his/her residual functional capacity and vocational factors,
5   s/he is not disabled.
    (Tr. at 28 - 29)

6
    20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 - 41 (1987)
7
    (citing 20 C.F.R. §§ 404.1520(b)-(f)); Reddick, 157 F.3d at 721. The burden of proof is
8
    on the claimant as to steps one through four. Tackett v. Apfel, 180, F.3d 1094, 1098 (9th
9
    Cir. 1999). Here, the ALJ found that Plaintiff satisfied steps one, two, and four but not
10
    step three. (Tr. at 29 - 30) If a claimant's impairments do not meet or equal the criteria
11
    for an impairment in the Listing at step three but do satisfy the fourth step, the evaluation
12
    moves to the fifth step. 20 C.F.R. § 404.1520(e). At the fifth step, the burden of proof
13
    shifts to the Commissioner as the ALJ acknowledged in her report. (Tr. at 35) Penny v.
14
    Sullivan, 2 F.3d 953, 956 (9th Cir. 1993). Thus, the critical issue here is step five: whether
15
    Plaintiff retains the residual functional capacity to perform substantial gainful work
16
    existing in significant numbers in the national economy in view of his age, education, and
17
    work experience.
18

19              **III. THE COMMISSIONER'S FINDINGS**

20          Plaintiff was born on July 5, 1960, and was forty-four (44) years old on
21   October 18, 2004, the date of the subject hearing. (Tr. at 28, 35) Plaintiff is 6 feet tall
22   (Tr. at 225) and weighed, according to the ALJ, approximately 300 pounds[8] on the date
23   of the subject hearing. (Tr. at 32) The ALJ described Plaintiff as morbidly obese.[9] (Tr.

24
    _____

25      [8] Dr. Easley's medical record for October 5, 2004, the closest record of Plaintiff's
    weight to the October 18, 2004 hearing, indicates Plaintiff weighed 274 pounds. This record
26   does not indicate whether this is the weight reported by Plaintiff or determined from a scale
    by the doctor's staff.
27
        [9] A medical record prepared by Judy L. Finney, M.D. indicated Plaintiff has "morbid
28   obesity" and that he "is consistent in having no interest at all in exercise or weight loss." (Tr.

at 32)  Plaintiff obtained a high school equivalent education and has one year of college education.  (Tr. at 28)  Plaintiff last worked on March 1, 2002. His past work experience includes employment as an auto brake mechanic, a grocery store stocker, a cook and taxi driver. (Tr. at 28, 499 - 501)  Although she referenced a record that indicated claimant stopped working for reasons unrelated to his impairments ("business related lay off"), the ALJ concluded that Plaintiff is unable to perform any of his past relevant work. (Tr. at 34, 37)

Plaintiff testified at the hearing that he is unable to work because of his back pain, his breathing difficulties and his mental problems.  (Tr. at 502)  Plaintiff described his back problem as his "number one problem" with "radiating pain down low." (Id.)  He indicated that the pain was getting worse and he needs "to sleep sitting up" which causes more pain and pressure on his hip. (Id.)  He testified that although his back pain is in the low, mid and upper back, the worst pain is the "real sharp" "constant" pain in his lower back located "right about his pant['s] line." (Tr. at 503)  Plaintiff described the severity of the pain as a constant 8 or 9 on a scale of 1 to 10 with 10 being the worst. (Id.)  Plaintiff further testified that he could sit for only about 35 to 40 minutes before he feels the need to lay down or move around due to the pain. (Id.)  He testified that he typically can not stand longer than 45 to 60 minutes before he needs to lean against something or sit down. (Tr. at 504)  In an eight-hour day, Plaintiff testified that he needs to lay down for about 3 hours due to his back pain if he is not having any breathing problems. (Id.)  Plaintiff acknowledged that Dr. Easley, a treating family physician, prescribes Duragesic skin patches and morphine sulfate pills twice a day for his pain. (Tr. at 504 - 505) The record reflects he was takes other medications as well.

Plaintiff's understanding of his breathing problem, which he testified requires frequent emergency room visits, is that he's "getting plugs that block up the passageways so [he] can't get air passed [his] throat into [his] lung and [he] end[s] up

_____

at  159; Exh. 5f, p. 3)

choking."  (Tr. at 505 - 506)  In the four months immediately prior to the October 18, 2004 hearing, he testified that  he coughs up "plugs" ( phlegm) daily which have caused him to be taken to the hospital by paramedics four times prior to the hearing because he could not breath. (Id.)  Plaintiff's testimony indicated he takes physician-prescribed medicine (Prednisone and Albuterol sulfate) and uses a breathing machine two to four times daily) and handheld inhalers. (Tr. at 507)  Each machine treatment takes ten minutes or so.

Plaintiff admitted in the hearing to taking Zyprexa for his schizophrenia and bipolar disorder and Bupropion for his depression, all prescribed by Dr. Gillcrest through "Valley (sic) Options."  (Tr. at 507)  ValueOptions (Nova) is a well-known behavioral health organization with 22 clinics in the Phoenix metro community.[10] Plaintiff candidly admitted to using methamphetamine earlier in month of the hearing. (Tr. at 509)  He testified he "very rarely" uses this speed-like illicit drug but when he does, it is because of his fear of dying in his sleep due to his breathing difficulties with phlegm. He claims the methamphetamine helps him stay awake and breathe. (Id.)  Upon cross-examination by the ALJ, Plaintiff could not estimate how often he used illicit drugs since March 2002 when he stopped working but denies using them when he did work. (Tr. at 514)  He testified that the Prednisone has caused him to lose eight teeth[11] in the two years before the hearing; he feels alone and is worried about losing his son  to his ex-wife.

At the hearing, Plaintiff testified that he lives with his 10-year old son whom he described as "very independent [who] mostly tak[es] care of me." (Tr. at 512) They live off welfare and money from his sisters. Plaintiff averred that his son does the laundry, takes out the trash, and makes his bed before he goes to school. (Id.)  Plaintiff

---

[10] See, www.valuoptions.com/news/releases/release03022006.htm

[11] It is common knowledge that the adverse oral effects of methamphetamine use ("meth mouth") can be devastating. This footnote is not intended to imply that Plaintiff's dental problems were caused, in whole or in part, by methamphetamine use.

1    acknowledged making his son something to eat, like a bagel or bowl of cereal, before he

2    goes to school and thereafter Plaintiff will usually sit around the apartment all day and

3    watch TV until his son comes home from school. Plaintiff testified that he can not walk

4    very far. (Tr. at 520)  When he goes to the grocery store, Plaintiff testified he can walk

5    from the handicapped parking area to the store's motorized shopping carts which he uses

6    to drive around inside the store while shopping. He claimed he can only lift objects up

7    to 20 pounds because, depending upon how many medications he has taken that day,

8    before he would lose his balance. (Tr. at 520 - 521)

9            Upon cross-examination by the ALJ, Plaintiff testified he stopped smoking

10   five or six weeks before the hearing[12] and that he stopped taking the physician-prescribed

11   Depakote because he was taking up to 22 pills a day and he felt the Depakote was not

12   doing anything for him. Besides, he testified that he did not feel he needed to take

13   Depakote because when he took it he "felt like a cabbage or a plant on the side of the

14   road just sitting all the time." (Tr. at 514)

15           The ALJ found that Plaintiff was unable to perform his past relevant work.

16   (Tr. at 37, ¶ 7)  Thus, the burden of proof shifted to the Commissioner to prove that other

17   work exists in significant numbers in the national economy that would accommodate

18   Plaintiff's residual functional capacity and vocational factors.  If Plaintiff's residual

19   functional capacity and vocational factors do not enable him to work, Plaintiff is disabled

20   within the meaning of the Act; otherwise, he is not disabled and not entitled to benefits.

21           Only two witnesses were called to testify at the October 2004

22   administrative hearing: Plaintiff and a vocational expert, Dr. George J. Bluth. Upon

23   questioning by the ALJ, Dr. Bluth testified that an individual of Plaintiff's age, education

24   and vocational background, with the physical and mental limitations set forth in Exhibits

25

26   ─────────────────────

27       [12] This testimony is of questionable credibility if Plaintiff was correctly quoted in the
     September 20, 2004 Scottsdale Healthcare hospital record ("Patient is a smoker,
28   approximately one pack a day.") (Tr. at 399)

1  12F[13], 23F[14] and 16F[15] prepared by three state agency non-examining physicians, would

2  be able to perform both sedentary and light exertional work available in significant

3  numbers in the national economy.  (Tr. at 518)  Considering this same hypothetical

4  person with the same limitations but adding the limitations set forth in Exhibit 30F[16]

5  prepared by a treating physician, Dr. Bluth concluded that no work would be available

6  to such a person. When Plaintiff's counsel asked Dr. Bluth to assume the information

7  contained in the pain questionnaire[17] completed by the same treating physician as well

8  as the other limitations contained in the ALJ's hypothetical questions, Dr. Bluth testified

9  that such a person would not be able to sustain any kind of work. (Tr. at 521 - 522)

10  Finally, when Plaintiff's counsel asked Dr. Bluth to assume the information contained in

11  a different treating physician's mental medical source statement[18] and to assume this same

12  individual was suffering from the cumulative effects of the limitations found by this same

13  physician, Dr. Bluth opined that such a person would not be able to sustain work related

14  activities on a regular and continuing basis (eight hours a day, five days a week or an

15  equivalent work schedule). (Tr. at 522).  The ALJ also conceded at the hearing that a

16  _____

17  [13] Exhibit 12F is a mental Residual Functional Capacity Assessment completed by non-
18  examining physician, Jack A. Marks, M.D., with Disability Determination Service ("DDS"),
   Arizona Department of Economic Security, on June 20, 2003. (Tr. at 246 - 249)

19  [14] Exhibit 23F is a Physical Residual Functional Capacity Assessment completed by
20  DDS non-examining physician, James F. Stagg, M..D., on October 18, 2003. (Tr. at 346 - 353)
21  Since the ALJ's report does not indicate that she relied on Dr. Stagg's finding, it will not be
   discussed herein.

22  [15] Exhibit 16F is a Physical Residual Functional Capacity Assessment completed by
23  DDS non-examining physician, Jerry L. Dodson, M..D., on July, 2003. (Tr. at 277 - 284)

24  [16] Exhibit 30F is the Medical Assessment of Ability to do Work-Related (Physical)
25  completed by treating physician Foster Easley, D.O., on October 15, 2004. (Tr. 423 - 424)

26  [17] Exhibit 31F is the Pain Functional Capacity Questionnaire prepared by Foster Easley,
   D.O. on October 5, 2004.  (Tr. at 425 - 426)

27  [18] Exhibit 14F is the Medical Assessment of Ability to do Work-Related (Mental)
28  completed by treating physician W.R. Womack, M.D. on July 2, 2003. (Tr. at 264 - 265)

person with the limitations consistent with Plaintiff's hearing testimony, i.e., he needs to lay down three to four hours a day, "would not be able to sustain any full-time work." (Tr. at 521)

The ALJ found that Plaintiff's chronic obstructive pulmonary disease, asthma, sleep apnea, obesity, cervical and lumbar degenerative disc disease, bipolar disorder, a learning disorder and polysubstance dependence allegedly in remission are severe impairments within the meaning of the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).  (Tr. at 29) The ALJ did not, however, find that Plaintiff's impairments are severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, subpart P, Regulations No. 4[19] "because no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. at 29 - 30)  The ALJ acknowledged that Plaintiff's impairments "may be expected to result in some pain and functional limitations" but found that Plaintiff's allegations concerning his symptoms and limitations were "lacking in credibility" and that Plaintiff's "medical history and other evidence in the record do not entirely substantiate the intensity of pain and degree of limitation the claimant has reported." (Id.)  The ALJ determined that Plaintiff had sufficient "residual functional capacity"[20] ("RFC") to perform "a significant range of light work as defined in 20 CFR §§ 404.1567 and 416.967." (Tr. at 36)  The ALJ concluded that Plaintiff's RFC permits him to perform light work existing in significant numbers in the national economy.  (Id.) Therefore, the ALJ found that Plaintiff "is not under a 'disability' as defined in the Social

---

[19] Specifically , the ALJ's report indicates that she considered Listing 3.03 B for asthma attacks and found that Plaintiff did not experience the frequency or severity of asthma attacks to meet the criteria of the listing. (Tr. at 30)

[20] The term "residual functional capacity" is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work related tasks (20 C.F.R. §§ 404.1545 and 416.945 and Social Security Ruling 96-8p). (Tr. at 30)

1    Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(g) and

2    416.920(g))." (Tr. at 37)

3                                **IV.  DISCUSSION**

4                In his Motion for Summary Judgment, Plaintiff alleges that the ALJ's

5    decision is not supported by substantial evidence and is founded on multiple errors.

6    Specifically, Plaintiff claims that (1) the ALJ erred by rejecting opinions of Plaintiff's

7    treating physicians, Dr. Womack and Dr. Easley, (2) the ALJ erred by relying on

8    opinions of non-testifying, non-examining state agency physicians, Jack A. Marks, M.D.

9    and Jerry L. Dodson, M.D., who did not review all of the evidence and gave little

10   explanations for their opinions, (3) the ALJ erred in evaluating Plaintiff's mental

11   impairments because the ALJ relied upon a one-time GAF score and determined a global

12   mental RFC assessment instead of the function-by-function assessment required by

13   Social Security Ruling 96-8p, and (4) the ALJ erred by discounting the severity of

14   Plaintiff's impairments without providing clear and convincing reasons and by failing to

15   specify what portion of Plaintiff's testimony was not credible and what evidence

16   undermined that testimony.  Plaintiff requests that the Court remand for an award of

17   benefits because the record is fully developed and, considering the improperly discredited

18   evidence, a finding of disability is clearly required. Alternatively, Plaintiff should remand

19   for further proceedings with specific instructions to address Plaintiff's assignments of

20   error.

21               In response to Plaintiff's motion, the Commissioner contends that the ALJ's

22   decision that Plaintiff was not disabled within the meaning of the Act is supported by

23   substantial evidence and is free of reversible legal error. The Commissioner frames the

24   issues as (1) whether the ALJ properly weighed the opinions of treating physicians Dr.

25   Womack and Dr. Easley; (2) whether the ALJ properly relied upon the opinions of the

26   State Agency physicians; (3) whether the ALJ properly evaluated Plaintiff's mental

27   impairments, and (4) whether the ALJ properly evaluated Plaintiff's allegations of the

28   severity of his symptoms and limitations.

1    Because treating physicians have a greater opportunity to know and

2    observe their patients, a treating physician's opinions are generally given more weight

3    than the opinion of a non-treating source. Magallanes, 881 F.2d at 751.  Under the

4    Regulations, if a treating physician's medical opinion is supported by medically

5    acceptable diagnostic techniques and is not inconsistent with other substantial evidence

6    in the record, the treating physician's opinion is given controlling weight. 20 C.F.R. §

7    404.1527(d)(2); Social Security Ruling (SSR) 96-2p; Holohan v. Massanari, 246 F.3d

8    1195, 1202 (9th Cir. 2001).  If the treating physician's medical opinion is inconsistent with

9    other substantial evidence in the record, "[t]reating source medical opinions are still

10    entitled to deference and must be weighted using all the factors provided in 20 CFR [§]

11    404.1527." SSR 96-2p; Holohan, 246 F.3d at 1202 ("Adjudicators must remember that

12    a finding that a treating source medical opinion is . . . inconsistent with the other

13    substantial evidence in the case record means only that the opinion is not entitled to

14    'controlling weight,' not that the opinion should be rejected. . . . In many cases, a treating

15    source's medical opinion will be entitled to the greatest weight and should be adopted,

16    even if it does not meet the test for controlling weight.").  Id.  An ALJ may rely on the

17    medical opinion of a non-treating doctor instead of the contrary opinion of a treating

18    doctor only if she or he provides "specific and legitimate" reasons supported by

19    substantial evidence in the record. Lester, 81 F.3d at 830. (internal quotation marks and

20    citation omitted). If the treating physician's opinion on the issue of disability is

21    controverted, the ALJ must still provide "specific and legitimate" reasons in order to

22    reject the treating physician's opinion. Id.

23    Mindful of these controlling rules in Social Security cases in the Ninth

24    Circuit, the Court concludes that the ALJ erred by rejecting the opinions of both

25    Plaintiff's treating physicians, Dr. Womack and Dr. Easley, and by not adopting the

26    unrebutted testimony of the vocational expert, Dr. Bluth, that a person with the

27    limitations found by Dr. Womack and/or Dr. Easley would not be able to sustain any kind

28    of work.

1    In a lengthy, hopscotch written decision that belies the simplicity of this

2  outcome-determinative issue, the ALJ rejected the opinions of Plaintiff's two treating

3  physicians and, in a fair comparison with her own, adopted the opinions of Drs. Marks

4  and Dodson, each of which was rendered, at least, 15 months before the October 2004

5  hearing. The ALJ wrote that she did not assign controlling weight to Plaintiff's treating

6  physicians (Drs. Womack and Easley) for "several reasons" yet the ALJ did not set forth

7  the "specific and legitimate reasons" "supported by substantial evidence in the record"

8  to explain her rationale for not giving deference the opinions of the treating physicians

9  and accepting the non-examining physicians' opinions and assessments in the

10  hypothetical questions posed to the vocational expert. Andrews, 53 F.3d at 1043;

11  Benecke v. Barnhart, 379 F.3d 587, 592 (9th Cir. 2004)(finding that "[t]he opinions of

12  these non-examining doctors are entitled to less weight than doctors who treated or

13  examined Benecke."); Penny, 2 F.3d at 958 ("Without a personal medical evaluation it

14  is almost impossible to assess the residual functional capacity of any individual.")

15    The expressed reason that the ALJ rejected Dr. Womack's opinion,

16  Plaintiff's primary care physician who had professionally seen and treated Plaintiff at

17  least 16 times over a 15 month period[21]  before the October 18, 2004 hearing, was

18  because he is a family practitioner,  there was no evidence that Dr. Womack conducted

19  a "mental status examination"[22] and "[Dr. Womack's] opinion appears to rest in part on

20  an assessment of impairments [psychiatric limitations] outside the doctor's area of

21  expertise." (Tr. at 34)  While she claimed to fully consider non-cited Ninth Circuit case

22

23

24

25

26    [21] Exhibits 10F, 19F and 24F. (PSOF, p. 5, fn. 11)

27    [22] It is unclear what the ALJ  means by a "mental status examination" because the ALJ
acknowledged in the same paragraph that Dr. Womack completed a Medical Source Statement
28  of Ability to do Work-Related Activities (mental)(Exhibit 14F).  (Tr. at 34)

law in her report[23], the ALJ's reasons for rejecting Dr. Womack's opinions directly

conflict with binding Ninth Circuit precedent:

> Finally, the ALJ argues that Dr. Kho's [treating physician and pain specialist] opinion as to [claimant's] mental functioning may be disregarded because he is not a mental health specialist.. . . His opinion constitutes "competent psychiatric evidence" and may not be discredited on the ground that he is not a board certified psychiatrist. (citation omitted) Indeed, the treating physician's opinion as to the combined impact of the claimant's limitations--both physical and mental--is entitled to special weight. As the Commissioner's own regulations recognize, treating physicians like Dr. Kho bring a "unique perspective to the medical evidence." 20 C.F.R. § 404.1527(d)(2). An integral part of the treating physician's role is to take into account all the available information regarding all of his patient's impairments--including the findings and opinions of other experts. The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment. This is particularly true in cases like Lester's, where the parts of the functional restrictions arising from the claimant's physical impairments cannot be separated from the parts arising from his mental impairments.

Lester, 81 F.3d at 833.

The Lester precedent is especially compelling here for two different reasons. First, not

one of the two non-treating, non-examining state agency physicians testified at the

hearing and, therefore, their opinions were not subjected to the rigors of cross

examination under penalty of perjury by knowledgeable counsel experienced with

medical issues and social security cases. Andrews, 53 F.3d at 1041 (9th Cir. 1995).

Secondly, none of the two non-examining physicians "review[ed] a massive amount of

medical evidence added to the file after their opinions were rendered and gave almost no

explanation for those opinions."[24]  Dr. Marks' opinion was rendered in June, 2003[25]; Dr.

---

[23] Tr. at 31.

[24] Plaintiff's Memorandum in Support of Motion for Summary Judgment (docket # 16), p. 7 - 8; PSOF ¶¶ 12 -13.

[25] See footnote 10 supra.

1   Dodson's on July, 2003[26] and, therefore, they could not have considered Plaintiff's

2   medical records generated thereafter, such as, the emergency room or other hospital

3   records from Yavapai Regional Medical Center (Exh 17F[27]), John C. Lincoln Hospital

4   (27F[28]), Scottsdale Healthcare Osborn (Exh. 29F[29]), Phoenix Baptist Medical Center

5   (33F[30]) and all of Dr. Easley's records[31],  the last couple of office visits with Dr. Womack

6   and Nova's Psychiatric Evaluation.[32] One may not reasonably argue that these medical

7   records were not relevant and material for the non-examining physicians to read and

8   consider to fairly evaluate Plaintiff's claims and treatment for his combined back,

9   breathing,  mental problems and his pain, all of which Plaintiff argues prevent him from

10   working because they directly support those claims.

11          The Commissioner argues conclusions for affirmation of the ALJ's

12   decision.  Specifically, the Commissioner writes that the ALJ set forth specific, legitimate

13   _____

14          [26]  See footnote 12 supra.

15          [27] Chief complaint: shortness of breath. (Tr. at 285 - 291)

16          [28] Sleeping difficulties due to "severe obstructive sleep apnea." (Tr. at 383 - 390)

17          [29] Emergency room records, dated March 30, 2004, with "chief complaint: shortness

18   of breath" (Tr. at 398 - 400); emergency room records, dated February 17, 2004, with "chief
    complaint: back pain and chronic sinus drainage" (Tr. at 401 - 402); emergency room records,

19   dated February 2, 2004, with "chief complaint: hip and back pain" (Tr. at 403 - 404);
    emergency room record, dated July 20, 2003, with "chief complaint: difficulty breathing."

20   Note: the ER physician's impression was (1) acute asthma and (2) methamphetamine abuse

21   (Tr. at 401 - 402)

22          [30]  Emergency room records, dated July 8, 2004, with "Reason for Consultation:

23   Bronchial asthma, intubated in field." and "Clinical assessment: Chronic obstructive
    pulmonary disease" (Tr. at 444 - 480)

24

25          [31] Dr. Easley assumed Plaintiff's care, treated and professionally saw Plaintiff at least
    nine times from April 15, 2004 through October 5, 2004. These records are significant because

26   they demonstrate that very strong (narcotic) drugs were prescribed for Plaintiff's chronic pain.
    (PSOF ¶ 6)

27

28          [32]  The October 7, 2004 Nova evaluation makes a diagnosis of bipolar disorder,
    psychosis and depression. (Tr. at 391 - 394)

1   reasons for not assigning controlling weight to the opinions of Plaintiff's treating

2   physicians and that substantial evidence supports the ALJ's rulings[33] but she gives little

3   discussion and analysis to why the ALJ rejected Dr. Womack's and Dr. Easley's opinions.

4   The Commissioner argues that Dr. Womack's opinion was "not supported by medical

5   evidence."[34] The Commissioner then repeats her reliance on Dr. Womack's status as a

6   family physician and properly notes that, in general, more weight is assigned to

7   specialists' opinions in their area of specialty, citing 20 C.F.R. § 404.1527(d)(5).  In the

8   Ninth Circuit, however, specialization alone of a non-treating physician does not trump

9   a treating physician's opinions: "[T]he primacy of [a treating physician's] opinion derives

10  from his superior *vantage* compared to a non-treating physician, even apart from any

11  superior *credentials*." Benton v. Barnhart, 331 F.3d 1030, 1036, fn. 1 (9th Cir. 2003)

12  (Emphasis in original). Moreover, the Commissioner does not fairly explain why "the

13  ALJ accorded far greater weight to the opinions of non-examining physicians"[35] rather

14  than giving Plaintiff's treating physicians' opinions more deference or greater weight as

15  required by the Ninth Circuit even if the ALJ found they did not meet the test for

16  controlling weight. Holohan, 246 F.3d at 1202.  This error alone warrants reversal.

17          By the same token, the ALJ did not assign controlling, deferential or

18  greater weight to the opinions of Dr. Easley, another treating physician who treated and

19  saw Plaintiff nine (9) times professionally from April 4, 2004 to October 5, 2004,[36] over

20  those opinions of the non-examining physicians who, again, only considered a portion

21  of Plaintiff's medical records and medical history over a year before the subject hearing.

22  Plaintiff argues that a material contradiction exists in the ALJ's narrative report and,

23  among other claims of error, the ALJ engaged in inappropriate speculation in discounting

24

25          [33] Commissioner's Response (docket # 22), p. 3, ll 6 - 10.

26          [34] Id. at ll 21 - 22.

27          [35] Id. at ll 8 - 9.

28          [36] Exhibit 32F.  (Tr. 427 - 443)

1    Dr. Easley's opinions.  The Commissioner, however, argues that specific and legitimate

2    reasons and substantial evidence (Dr. Marks' and Dr. Dodson's opinions and "little

3    objective evidence of a significant medical problem"[37]) existed for the ALJ to not give

4    either controlling, deferential or greater weight to Dr. Easley's opinions. Moreover, the

5    Commissioner argues, the ALJ found that Plaintiff's "allegations of subjectively disabling

6    complaints" were not credible and Dr. Easley's opinions were based upon these non-

7    credible subjective complaints, citing Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir.

8    1997). The Court disagrees.

9            When the ALJ wrote that Plaintiff's "treating physician [Dr. Easley]

10   provided restrictions significantly consistent with those reached in this decision[]" and

11   then she cited Dr. Easley's pain assessment[38] as support, one can only assume that the

12   ALJ is referring to Plaintiff's issues of pain even though the ALJ does not specify the

13   restrictions to which she is referring.   (Tr. at 32) Later in her report the ALJ

14   acknowledges that she "has not assigned controlling weight to [Dr. Easley's] statements

15   [regarding Plaintiff's pain assessment] because his treatment notes do not corroborate the

16   severity of pain that the claimant has alleged and the doctor has reported." (Tr. at 34 - 35)

17   The written basis for her conclusion and criticism of Dr. Easley's opinions is because it

18   "appears" that Dr. Easley "relied quite heavily" on Plaintiff's subjective report of

19   symptoms and limitations and "seemed to uncritically accept as true" what Plaintiff

20   reported. This is sheer conjecture on the part of the ALJ as there is no evidence in the

21   record, much less substantial evidence, to warrant this conclusion and criticism of the

22   foundation of Dr. Easley's opinions. Conjecture and speculation do not meet the

23

24   ─────────────

25   [37] Commissioner's Memorandum in Support of Defendant's Cross-Motion Summary
     Judgment (dkt # 22), at 4, l 15.

26
     [38] On October 5, 2004, Dr. Easley opined that Plaintiff's pain or degree of pain "seriously
27   affects ability to function"; can "reasonably be expected to result from clinical or diagnostic
     findings" that is documented, and is sufficiently severe to "frequently" interfere with Plaintiff's
28   attention and concentration.  Exhibit 31F (Tr at 425 - 426)

1   definition of substantial evidence. Quan v. Gonzales, 428 F.3d 883, 887 (9th Cir.2005)

2   ("Conjecture and speculation can never replace substantial evidence as the basis for an

3   adverse credibility finding.") (citing immigration case  Guo v. Ashcroft, 361 F.3d 1194,

4   1199 (9th Cir.2004)); Green-Younger v. Barnhart, 335 F.3d. 99, 108 (2ⁿᵈ Cir. 2003) (ALJ

5   and district court reversed for failing to accord controlling weight to treating physician's

6   opinion that applicant could not work because of severe pain: stating that the treating

7   physician "relied on Green-Younger's subjective complaints hardly undermines his

8   opinion as to her functional limitations, as '[a] patient's report of complaints, or history,

9   is an essential diagnostic tool.'" (citation omitted)).

10          Contrary to the ALJ's speculation, Dr. Easley's opinion as to Plaintiff's

11   degree of pain set forth in his pain assessment (Exh 31F, ¶ 3; Tr. at 425) indicates that

12   it is based upon objective, documented clinical or diagnostic findings. The form does not

13   ask the physician to identify those findings but the May 4, 2004 radiographic evidence

14   shows (1) "mild degenerative change at the anterior and lateral aspect of the vertebral

15   bodies" and "mild facetal arthrosis" of the lumbosacral spine, and (2) mild degenerative

16   changes of the cervical spine with "an ossific density measuring approximately 8 x 6

17   lying anterior to the C5-6 intervertebral disk space consistent with a degenerative

18   calcification." (Tr. at 436 and 437)  Albeit "mild" in the radiologist's interpretation, it is,

19   nevertheless, an "acceptable diagnostic technique" that supports Dr. Easley's opinion.

20   Holohan, 246 at 1202. Additionally, the Commissioner has cited no evidence in the

21   record that mild degenerative changes in the spine can not cause back pain. Sufficient

22   objective evidence exists to credit Dr. Easley's opinions.

23          While the Court recognizes that oftentimes an ALJ must make difficult

24   decisions regarding credibility, the law of the Ninth Circuit provides that once a claimant

25   produces medical evidence of an underlying impairment (here the ALJ found 8 different

26   severe impairments), the Commissioner may not discredit the claimant's testimony as to

27   the severity of symptoms merely because they are unsupported by objective medical

28   evidence. Bunnell v. Sullivan 947 F.2d 341, 343 (9th Cir.1991) (en banc); Moisa v.

1   Barnhart, 367 F.3d 882 (9th Cir. 2004). Here, the ALJ found that Plaintiff's multiple

2   impairments were not only severe, they precluded him from doing his previous work.

3   Moreover, there was no affirmative evidence presented at the hearing that Plaintiff was

4   malingering. Additionally, the ALJ conceded that Plaintiff's impairments "may be

5   expected to result in some pain and limitations" and that he "does experience a degree of

6   limitation." (Tr. at 30)  Notwithstanding these findings and the ALJ had "no reason to

7   dispute the veracity" (Id.) of the two witness statements which corroborated Plaintiff's

8   testimony on his limitations and lifestyle[39], the ALJ found Plaintiff's "allegations

9   concerning his symptoms and non-exertional limitations lacking in credibility"; that his

10  "statements concerning his impairments and the impact upon his ability to work are not

11  entirely credible" and "there exist good reasons for questioning the reliability of the

12  claimant's subjective complaints"[40] (Tr. at 30, 35)

13          The law in the Ninth Circuit is clear. "Unless there is affirmative evidence

14  showing that the claimant is malingering, the Commissioner's reasons for rejecting the

15  claimant's testimony must be 'clear and convincing.'" Reddick, 157 F.3d at 722; Lester

16  v. Chater, 81 F.3d 821, 834 (9th Cir.1995); Swenson v. Sullivan, 876 F.2d 683, 687 (9th

17  Cir. 1989). Like the error made in Holohan, the ALJ selectively relied on some entries

18  in claimant's medical records and ignored many others that  supported Plaintiff's claims

19  of pain and difficulties in breathing, standing and inability to work. Holohan, 246 F.3d

20  at 1206.  The  examples which the ALJ cited do not constitute clear and convincing

21  reasons for rejecting Plaintiff's sworn testimony. For example, the ALJ finds that there

22  have been significant gaps in Plaintiff's treatment but she doesn't identify those gaps and

23

24  ───────────────

25  [39] Exhibits 3F (erroneously labeled as 3E in the report; Tr. at 98 - 101) and 4F
    (erroneously labeled as 4E in the report; Tr. at 102 - 110) are statements provided by Plaintiff's

26  roommate, Amanda Hensley, in June, 2003 and a friend, Donald Freestone, who saw Plaintiff
    frequently in May - June, 2003.

27

28  [40] The ALJ wrote that these reasons are "explained elsewhere in this decision" but the
    Court and the parties are left to guess at what she is referring in this 11-page report.

                                    - 19 -

the significance of these gaps, if they do exist; that Plaintiff's treatment "has been essentially routine and/or conservative in nature"; and that except for narcotic pain medication, Plaintiff "has not been under treatment for a chronic pain syndrome" by undergoing transcutaneous electrical nerve stimulator, acupuncture, physical therapy, biofeedback or other treatment or therapy. (Tr. at 31)  This Court is unaware of any case law or regulation, and the Commissioner has cited none, that one's disabling pain is not real and genuine unless one's treating physician has prescribed, and the claimant has undergone whether he can afford it or not, such pain treatment. Also, there is no evidence that had Plaintiff's treating physician recommended and Plaintiff underwent such treatment, Plaintiff's pain would have been eliminated or reduced to a degree that would permit Plaintiff to work. The ALJ's expertise is in the area Social Security law, not medicine, and she improperly substituted her opinion in this regard for that of Dr. Easley's regarding Plaintiff's degree of pain and pain management. Medical treatment and pain management are beyond the ALJ's area of expertise.[41]

Finally, Plaintiff's activities of daily living[42] that the ALJ cited to support her conclusions on credibility and his disputed ability to engage in substantial gainful employment are either an inaccurate characterization of the evidence or provide little, if any, lawful support for rejecting Plaintiff's claim that he is unable to work.  The ALJ wrote that Plaintiff's "limited daily activities cannot be objectively verified with any degree of certainty" totally ignores the corroborating witness statements found in Exhibits 3F and 4F. (Tr. at 32)  The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [the Plaintiff's] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.'" Benecke, 379 F.3d at 593; Vertigan v. Halter, 260

---

[41] See citations to authority at Plaintiff's Memorandum (dkt # 16), at 6, fn. 17.

[42] With regard to the claimant's daily activities, Plaintiff testified that he watched television most of every day, which is supported by the witness statements (Exh. 3F and 4F), and that he prepared easy morning meals for his adolescent son and went grocery shopping.

1   F.3d 1044, 1050 (9th Cir.2001) (quoting <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th

2   Cir.1989)). The ALJ also found that Plaintiff's "caring for young children[43] can be quite

3   demanding both physically and emotionally, which further suggests the claimant is not

4   as limited as he has alleged." (Tr. at 34)  As a general statement, most parents will agree

5   that caring for very young children is, among others, physically and emotionally

6   demanding.  This generalization, however, is contradicted by the record that Plaintiff's

7   son essentially cares for himself except for grocery shopping, constitutes inappropriate

8   speculation upon which legal decisions should not be based, and does not meet the Ninth

9   Circuit's "clear and convincing" standard for rejecting Plaintiff's testimony. <u>Reddick</u>, 157

10  F.3d at 722.  This is clear error.

11              **V.  REMAND FOR BENEFITS OR ADDITIONAL EVIDENCE**

12              In light of the ALJ's errors, the Court must determine whether it should

13  remand for benefits or remand for additional evidence. The Court has discretion to

14  remand for either purpose. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996);

15  <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir., 2002).  Remand for further

16  administrative proceedings is appropriate if enhancement of the record would be useful.

17  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.2000); <u>Moisa v. Barnhart</u>, 367 F.3d 882,

18  886-87 (9th Cir.2004) (stating, in a Social Security disability case, that remand is

19  appropriate in most circumstances).   Remand for further proceedings, however, is

20  unnecessary if the record is fully developed and further administrative proceedings would

21  serve no useful purpose. <u>Smolen</u>, 80 F.3d at 1293.  Such a circumstance arises when: (1)

22  the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's

23  evidence; (2) there are no outstanding issues that must be resolved before a determination

24  of disability can be made; and (3) it is clear from the record that the ALJ would be

25  required to find the claimant disabled were such evidence credited.  <u>Harman</u>, 211 F.3d

26  at 1178; <u>McCartey</u>, 298 F.3d at 1076.  The Court concludes that the ALJ should have

27

28              [43] There was evidence that Plaintiff cared for only one child, aged 10, at time of hearing.

1   credited Dr. Cunningham's assessment through the hypothetical question posed to the

2   vocational expert which likely would have resulted in an answer that Plaintiff's physical

3   limitations preclude Plaintiff from further gainful employment.  Had the ALJ properly

4   considered Plaintiff's evidence and properly followed existing law on the opinions of

5   examining physicians vis a vis the non-treating, non-examining state agency physicians,

6   the ALJ would have found Plaintiff disabled within the meaning of the Act and eligible

7   for benefits, assuming, of course, that Plaintiff's illicit drug usage is not a contributing

8   factor material to the determination of disability.

9                                    **VI.  DRUG USAGE**

10              Although the Court finds that the ALJ erred in determining that Plaintiff

11   was not disabled within the meaning of the Act and that Plaintiff is, indeed, disabled

12   under the Act, this finding does not automatically entitle Plaintiff to disability

13   benefits.

14              On March 28, 1996, Congress enacted Section 105 of the Contract with

15   American Advancement Act ("CAAA"), Pub. L. No. 104-121, § 105(a)(1)(C),

16   including a subsection entitled "Denial of Disability Benefits to Drug Addicts and

17   Alcoholics, 42 U.S.C. § 423(d)(2)(C).  This statute provides that "[a]n individual shall

18   not be considered to be disabled for purposes of this title if alcoholism or drug

19   addiction would (but for this subparagraph) be a contributing factor material to the

20   Commissioner's determination that the individual is disabled." 42 U.S.C. §

21   423(d)(2)(C).[44] The implementing regulations specify that: "If we find that you are

22   disabled and have medical evidence of your drug addiction or alcoholism, we must

23   determine whether your drug addiction or alcoholism is a contributing factor material

24

25         [44] Federal law also provides that if a person receiving certain Social Security benefits
     is convicted of a felony where an element of the offense is the possession, use or distribution
26   of a controlled substance, as defined in 21 U.S.C. § 802(6), such person is immediately
     ineligible certain types of social security and other governmental benefits. See, 21 U.S.C. §
27   862a; United States v. Littlejohn, 224 F.3d 960 (9th Cir. 2000).

28

1   to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a); <u>Bustamante</u>

2   <u>v. Massanari</u>, 262 F.3d 949 (9th Cir. 2001); <u>Ball v. Massanari</u>, 254 F.3d 817 (9th Cir.

3   2001).

4          Where the claimant is found to be disabled and there is medical

5   evidence of the claimant's drug addiction or alcoholism, the ALJ should proceed

6   under 20 C.F.R. §§ 404.1535 or 416.935 to determine if the claimant "would still [be

7   found] disabled if [he or she] stopped using alcohol or drugs."   20 C.F.R. §§

8   404.1535. 416.935; <u>Bustamante</u>, 262 F.3d at 955.

9          In this case, Plaintiff is disabled but there is medical evidence of his

10  significant long-term usage of methamphetamine.[45] The ALJ mentioned or discussed

11  Plaintiff's methamphetamine  usage 11 times in her report and concluded that she

12  "need not make a determination regarding whether drug/alcoholism[46] [was] a

13  contributing factor material in determining disability because the claimant [had] not

14  been found disabled." (Tr. at 37)   In light of the Court's finding that Plaintiff is

15  disabled within the meaning of the Act, the Court will remand this matter for a

16  determination of whether Plaintiff's illicit drug usage or addiction, if any, "is a

17  contributing factor material to the determination of disability."   42 U.S.C. §

18  423(d)(2)(C).  The key and sole inquiry in making this determination on remand is

19  whether the ALJ would still find Plaintiff disabled if he stopped using illicit drugs.

20

21

22  [45] Methamphetamine is classified as a "dangerous drug" under Arizona law. A.R.S. §
    13-3401. Simple possession of methamphetamine is a Class 4 felony and carries a
23  presumptive prison sentence of 2.5 years subject to the Arizona constitutional limitations of
    Proposition 200. A.R.S. § 13-3407; § 13- 701(C)(3); § 13-901.01(A) and (D).
24  Methamphetamine is classified as a Schedule III "controlled substance" under federal law. 21
    U.S.C. § 802(6) and  § 812(c).  Simple possession of methamphetamine is a Class A
25  misdemeanor for a first conviction under federal law and carries a maximum prison sentence
    of 12 months; a Class E felony if convicted with a similar prior conviction. 21 U.S.C. §
26  844(a).

27
    [46] There is no evidence cited in the record by the ALJ that Plaintiff had an alcohol
28  problem at any time in his life.

1  20 C.F.R. § 404.1535.   If the ALJ finds that Plaintiff's unlawful drug use was/is a
2  contributing factor material to the determination of his disability, benefits should be
3  denied.   42 U.S.C. § 423(d)(2)(C).   On the other hand, if the ALJ finds that Plaintiff's
4  illegal drug use was/is not such a factor, the ALJ should award benefits in accordance
5  with the undersigned's findings in this Order.

6          Accordingly,

7          **IT IS HEREBY ORDERED** that Plaintiff's Motion For Summary
8  Judgment (document # 14) is **GRANTED.**

9          **IT IS FURTHER ORDERED** that Defendant's Cross-motion For
10 Summary Judgment (doc. # 21) is **DENIED**.

11         **IT IS FURTHER ORDERED** that this matter is reversed and remanded
12 for a hearing consistent with this order.

13         DATED this 24th day of April, 2006.

14

15

16                                     Lawrence O. Anderson
                                       United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28